IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRY DIBBLE, B81130, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-1427- RJD |
| ) | |
| WEXFORD HEALTH SOURCES, INC., et ) | |
| al. ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**DALY, Magistrate Judge:**

This matter comes before the Court on Defendants' Motions for Summary Judgment on the issue of administrative remedy exhaustion.   Docs. 75, 78, and 80.   Plaintiff filed Responses (Docs. 86-88) and Defendants replied (Docs. 89-21).

**BACKGROUND**

Plaintiff, currently incarcerated within the Illinois Department of Corrections ("IDOC") at Shawnee Correctional Center, filed this lawsuit pro se pursuant to 42 U.S.C. §1983.   Doc. 1.   He alleges that his Constitutional rights were violated at Lawrence Correctional Center ("Lawrence") related to a large and painful lipoma (fatty growth) on the back of his head.   *Id*.   After Plaintiff filed suit, he retained counsel who filed a First Amended Complaint on his behalf, alleging that on July 2, 2020, Defendant Nurse Practitioner Luking attempted to remove the lipoma, but instead "dissected a piece of muscle from the back of his head."   Doc. 19, ¶4.   Defendants Sgt. Johnson and Dr. Pittman witnessed the botched removal procedure but failed to intervene.   *Id*., ¶¶38, 53. Following the removal procedure, Plaintiff had new complications, including eye twitching and

the feeling of bugs crawling on his head. *Id.*, ¶49. He repeatedly sought medical care at Lawrence and a referral to an outside specialist. Dr. Pittman requested an outside referral for Plaintiff, but Defendant Dr. Garcia denied the request. *Id.*, ¶62. Dr. Shah said "pain from a lipoma would be part of Plaintiff's life." *Id.*, ¶69. Nurse Practitioner Stover prescribed fish oil to Plaintiff and told him the lipoma was just "cosmetic." *Id.*, ¶74. *Id.* The health care staff were trying to "cover up" Defendant Luking's conduct by ignoring Plaintiff's symptoms. *Id.*, ¶64. However, on May 19, 2021, Plaintiff underwent lipoma removal surgery at an outside hospital. Plaintiff alleges that Defendant Wexford Health Sources, Inc. (a private company that contracts with IDOC to provide medical care to inmates and employed all of the individual defendants except Sgt. Johnson) has a policy, practice, and/or custom to refuse offsite medical treatment for inmates (as well as cover up mistakes by staff members).

Following the Court's review under 28 U.S.C. §1915A, Plaintiff proceeded on the following claims:

> Count 1:    Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical need against all Defendants.
>
> Count II:    Eighth Amendment claim for failure to intervene against all individual Defendants.
>
> Count III:   Conspiracy to deprive Plaintiff of his constitutional rights against all Defendants.
>
> Count IV:   *Monell* claim against Defendant Wexford Health Sources, Inc. ("Wexford") for their policies and/or practices of denying inmates specialty or offsite medical care, "cover[ing] up" the misconduct of its medical staff, and allowing medical staff to perform unauthorized medical procedures for which the staff was "utterly unqualified.
>
> Count V:    Fourteenth Amendment claim for denial of due process against Defendant Luking.

   Count VI:  Assault against Defendant Luking.

   Count VII:  Battery against Defendant Luking.

   Count VIII:  Intentional Infliction of Emotional Distress against Defendant Luking.

   Count IX:  Negligent Infliction of Emotional Distress against Defendant Luking.

   Count X:  Negligent or Willful and Wanton Conduct against all Defendants.

### Plaintiff's Grievances

**Grievance #7-20-203 (Doc. 86-1)**

  On July 15, 2020, Plaintiff submitted the following grievance at Lawrence:

> On June 24, 2020 I was called to "Nurse Sick Call" to consult with RN Luking in regards to the painful lipoma on the back of my head. RN Luking informed me that she would submit a request to Wexford to remove the lipoma herself.
>
> On July 2, 2020 I was called to the health care unit. RN Luking informed me that Wexford approved the lipoma removal procedure. I was instructed to lie face down on the exam table. RN Luking injected the lipoma with a numbing agent, then cut a one inch opening on top of the lipoma….[she] spent a considerable amount of time attempting to cut the tissue out of my head. She informed me that "lipomas often attach themselves to the skull when they have been inside there for a long time."
>
> RN Luking finally informed me that the procedure was complete and began stitching me up. After being stitched up, I cleaned blood off my face in the sink located in the exam room.
>
> RN Luking showed me a dime size piece of red muscle tissue that was still clamped in a medical tool. RN Luking put a small piece of gauze over the stitched up area and gave me a blister pack of 30, 400 mg Ibuprofen with instructions written on them to "take 2 tabs 3x a day as needed."
>
> I then returned to the housing unit. I was not seen again by any

> medical personnel about changing my bandages.
>
> On July 9, 2020, I was called to the Health care unit and my stitches were removed by an unknown nurse in the lab room.
>
> On July 15, 2020, I was called to the Health Care Unit to see Dr. Pittman. I informed her that I am experiencing pain, tingling sensations around and under the lipoma and numbness on the right side of the lipoma. Dr. Pittman informed me that she would submit a request to Wexford to have me sent to an outside specialist, as this surgery was never approved.
>
> Mr. Brown from B of I then came to the Health Care Unit at the request of Dr. Pittman and photographed the one inch scar over the lipoma which his still in my head. Dr. Pittman told Mr. Brown to email her the photo as it is to be placed in my medical file.
>
> I then returned to the Housing Unit.
>
> I am requesting this grievance be given emergency status due to the pain, tingling sensation, and numbness that I am presently experiencing.

Plaintiff fully exhausted this grievance prior to filing suit. It was deemed moot at all levels of review.

**Grievance 8-20-237 (Doc. 86-2)**

On August 18, 2020, Plaintiff submitted the following grievance at Lawrence:

> On 7-15-20, I filed an Emergency Grievance over the botched surgical procedure that was performed here at the facility on 7-2-20 by NP Luking. This surgery according to my medical records was botched and unauthorized and was done in an unsanitary environment during the Covid-19 pandemic. Since the unauthorized surgery I have been experiencing constant shooting pains, tingling sensations on the left side of my head around the lipoma and across my face. As well as a left eye twitch. On 7-29-20 that emergency grievance was denied and deemed moot…I have since submitted multiple requests to the health care unit reporting the conditions that I am experiencing and asking for proper medical care…Dr. Shah denied my request for proper medical treatment and told me that "pain is a part of life, the lipomas are considered cosmetic and are not removed." Then he wrote "observe" as his treatment plan in my

> medical file. Dr. Garcia and Dr. Shah denied the referral for general surgery that was submitted by Dr. Pittman.
>
> The conditions I am experiencing since the failed lipoma removal surgery lead me to believe that I am suffering from nerve damage my requests for outside expert examination are being denied. I am being denied proper medical treatment after an unauthorized, botched lipoma removal surgery was done on me in an unsanitary exam room at the prison during the Covid-19 pandemic….Dr. Shah is "observing" as I am living with the pain and suffering the after effects of a failed surgical procedure.

Plaintiff fully exhausted this grievance prior to filing suit. It was denied by the prison as a "duplicate" to grievance #7-20-203 and denied by the Administrative Review Board as moot.

**Grievance #10-20-187 (Doc. 86-3)**

On October 19, 2020, Plaintiff submitted the following grievance at Lawrence:

> On 9-27-20, I submitted a request to the Health Care in regard to the pain I am experiencing due to the attempted removal of a lipoma on July 2, 2020. I have not received a call pass for this issue.
>
> I have been experiencing pain, tingling sensations, and a twitch in my left eye since the lipoma surgery. I have complained of these conditions for 3 months, in response I have been issued ibuprofen and fish oil pills. My requests to be sent out to see a specialist have been denied by Dr. Shah and NP Luking, and NP Stover. I have spoken face to face with Warden Brookhart regarding the attempted lipoma removal, I informed Warden Brookhart of Dr. Shah's denial…I am being denied proper medical treatment in regard to pain, tingling sensations, and a left eye twitch caused by surgery that (per my medical records) was unauthorized and botched.

Plaintiff fully exhausted this grievance prior to filing suit. It was deemed moot at all levels of review.

## Discussion

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. For inmates within the IDOC, grievances must

contain the following requirements:

> The grievance shall **contain** factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c).

The burden rests with Defendants to establish that Plaintiff failed to exhaust his administrative remedies prior to filing suit. *Smallwood v. Williams*, 59 F. 4th 306, 315 (7th Cir. 2023). Defendants agree that Plaintiff fully exhausted grievances 7-20-203, 8-20-237, 10-20-187, but they conted that Plaintiff failed to identify certain Defendants and certain claims within those grievances.

Defendant Johnson's Motion for Summary Judgment is well-taken. Plaintiff's grievances do not identify Defendant Johnson by name, nor do they mention the presence of a security officer who witnessed the botched lipoma removal (and there are no other allegations against Defendant Johnson in the Complaint). The Court assumes that a security officer is likely always present in the health care unit while inmates are being treated, but without some sort of mention of an officer as a witness to problematic medical treatment, prison officials are not alerted to any issue regarding non-medical staff members' failure to intervene or other deliberate indifference to a serious medical need. Because Plaintiff failed to alert prison officials that a non-medical staff member had some type of involvement in the events of July 2, 2020, he failed to exhaust his administrative remedies against Sergeant Johnson and his claims against him are DISMISSED WITHOUT PREJUDICE.

Similarly, Plaintiff's Amended Complaint alleges that on July 15, 2020, Dr. Pittman told Plaintiff the healthcare staff was "gossiping" about his condition while Nurse Practitioner Luking was trying to remove the lipoma. Dr. Pittman "peeked" into the exam room but did not try to stop Defendant Luking's "egregious misconduct." Doc. 19, ¶53. Plaintiff did not include the information from this conversation in his grievances; this conversation with Dr. Pittman occurred earlier in the day before he submitted the first of his three fully exhausted grievances. Doc. 86-1, p. 3. Therefore, to the extent that Plaintiff contends that Dr. Pittman violated his Eighth Amendment rights on July 2, 2020 while Nurse Practitioner Luking removed some of his muscle tissue, Plaintiff's claims against Dr. Pittman in Counts I and II are DISMISSED WITHOUT PREJUDICE for Plaintiff's failure to include "factual details regarding [this] aspect of [his] complaint" in his grievances. 20 ILL. ADMIN. CODE § 504.810(c).

The remaining arguments by Defendants attempt to place a higher pleading standard on Plaintiff's grievances than is required by the Illinois Administrative Code. For example, the remaining Defendants all contend that Plaintiff did not mention any type of conspiracy in his grievances, and therefore ask that the Court dismiss Count III. Neither Seventh Circuit case law nor the Illinois Administrative Code require inmates to plead their legal theories in their grievances. *Id.*; *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Plaintiff identified the remaining Defendants by name, and identified the same events that are now alleged in his Amended Complaint. He made repeated visits to the health care unit, he received conflicting information from Defendants about what could/would be done for his condition, and Defendants seemingly did nothing for his pain. Regardless of whether these facts will ultimately prove a "conspiracy" existed among Defendants to cover up Defendant Luking's mistake and/or deny Plaintiff specialty medical care, his grievances contain the same facts that are alleged in his

Complaint to constitute a conspiracy.[1]

Defendants make identical arguments regarding Plaintiff's remaining claims. The remaining claims rely on the factual allegations discussed above in Plaintiff's Amended Complaint, and those factual allegations are all contained in Plaintiff's fully exhausted grievances (except for the allegations that Dr. Pittman and Sgt. Johnson witnessed the botched removal procedure but did not intervene). Accordingly, the summary judgment motion (Doc. 75) by Defendants Wexford, Luking, Stover, Garcia, and Shah is DENIED. Plaintiff's claim(s) against Defendant Pittman for observing Plaintiff's botched lipoma removal surgery and not intervening on July 2, 2020 are DISMISSED WITHOUT PREJUDICE. Defendant Pittman's summary judgment motion (Doc. 80) is otherwise DENIED. Plaintiff's claims against Defendant Johnson are DISMISSED WITHOUT PREJUDICE.

**IT IS SO ORDERED.**

**DATED:   August 29, 2024.**

s/ *Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**

---

[1] To the extent that Defendants are arguing those facts *could not* or *did not* constitute a conspiracy, that is not a relevant argument for an exhaustion motion.