IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRY DIBBLE, B81130, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-1427- RJD |
| ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| CARISSA LUKING, DR. LYNN PITTMAN, ) | |
| DR. VIPIN K. SHAH, DR. GARCIA, and ) | |
| SARA STOVER, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff, incarcerated within the Illinois Department of Corrections ("IDOC"), filed this lawsuit pro se pursuant to 42 U.S.C. §1983. Doc. 1. He alleged that his Constitutional rights were violated at Lawrence Correctional Center ("Lawrence") related to a large and painful lipoma (fatty growth) on the back of his head. *Id.* After Plaintiff filed suit, he retained counsel who filed a First Amended Complaint on his behalf, alleging that on July 2, 2020, Defendant Nurse Practitioner Luking attempted to remove the lipoma, but instead "dissected [a piece of muscle] from the back of his head." Doc. 19, ¶4. Dr. Pittman allegedly witnessed the botched removal procedure. *Id.*, ¶¶38, 53. Following the removal procedure, Plaintiff had new complications, including eye twitching and the feeling of bugs crawling on his head. *Id.*, ¶49. He repeatedly sought medical care at Lawrence and a referral to an outside specialist. Dr. Pittman requested an outside referral for Plaintiff, but Defendant Dr. Garcia denied the request. *Id.*, ¶62. The health care staff tried to "cover up" Defendant Luking's conduct by ignoring Plaintiff's symptoms. *Id.*, ¶64. However, on May 19, 2021, Plaintiff underwent lipoma removal surgery at an outside

hospital.  *Id*., ¶76.  Plaintiff alleges that Defendant Wexford Health Sources, Inc. (a private company that contracted with IDOC to provide medical care to inmates and employed all of the individual defendants) has a policy, practice, and/or custom to refuse offsite medical treatment for inmates (as well as cover up mistakes by staff members).  *Id*., ¶¶99, 100.  He also brings various state law claims against Defendants.  *Id*., pp. 19-22.  This matter now comes before the Court on discovery disputes between Plaintiff and Defendants Wexford and Luking.  A discovery dispute conference was held on January 6, 2026.  Doc. 116.

**Wexford's Rule 30(b)(6) deposition**

Plaintiff served Wexford a notice of deposition pursuant to Federal Rule of Civil Procedure 30(b)(6) that listed "the decision to discipline (or not) Defendant Luking for conducting an unauthorized lipectomy on Plaintiff, including what investigation was undertaken (if any) in the aftermath, what discipline was imposed (if any), and what remedial measures (if any) were implemented to prevent that kind of conduct from recurring" as one of the topics. Wexford produced Dr. Neil Fisher as its witness.  When asked whether it was "fair to say that Wexford conducted no investigation into Nurse Practitioner Luking's attempt to remove Plaintiff's lipoma", Dr. Fisher responded, "I don't know."  Dr. Fisher testified that he had reviewed Defendant Luking's personnel file and saw nothing "that would represent an investigation."  He also spoke with Yolanda Johnson (who Dr. Fisher apparently believed to be a regional manager for Wexford during the relevant time period).  Yolanda Johnson did not remember the incident involving the removal of Plaintiff's lipoma by Defendant Luking.  Other than speaking with Yolanda Johnson and reviewing Defendant Luking's personnel file, Dr. Fisher did not confirm whether Wexford investigated Defendant Luking's lipoma removal.  Dr. Fisher explained "there's many people who worked for Wexford. There may have been someone who worked for Wexford that did

investigate this, that I was not aware of."

Plaintiff contends that Dr. Fisher was not adequately prepared for his deposition and the Court agrees. Rule 30((b)(6) required him to testify regarding "information known or reasonably available" to Wexford. Dr. Fisher testified that perhaps the regional medical director investigated the incident at issue, but provided no explanation as to why he did not know whether that investigation occurred. Moreover, since Dr. Fisher's deposition, counsel for Wexford has learned that Yolanda Johnson was not the regional manager during the relevant time. Certainly, it is relevant and discoverable for Plaintiff to learn whether an investigation occurred regarding the lipoma removal and Wexford does not argue otherwise. During the discovery dispute conference, defense counsel suggested that this information could be disclosed by Wexford in a response to a Request to Admit. That may be true, but there is no such Request to Admit before the Court at this time and the Court declines to draft one for the parties. Wexford SHALL produce a witness for a second Rule 30(b)(6) deposition on the topic of whether any investigation was conducted regarding Defendant Luking's removal of Plaintiff's lipoma, and, if so, what that investigation involved. Wexford shall pay the court reporter's attendance fee for the deposition. In lieu of a deposition, the parties may agree to Wexford's disclosure of this information via Response to Request to Admit. Wexford must produce a Rule 30(b)(6) deponent or otherwise provide the information to Plaintiff by February 13, 2026.

**Defendants' Responses to Requests for Production 17 and 18**

Plaintiff alleges that Wexford had a practice of prohibiting prisoners "from gaining access to specialty or other offsite care, even when such care was medically necessary." Doc. 19, ¶100. In Request for Production #17, Plaintiff asks Defendants Wexford, Garcia, Shah, Luking, and Stover for "all documents and communication sufficient to show the number of approved referrals

for off-site care…for medical conditions and procedures classified by Wexford as 'cosmetic' and/or 'elective' between January 1, 2019 and the present…[and] the dates of those approvals." Request for Production #18 uses similar language but asks for "the number of *disapproved* referrals for off-site care…" The Court agrees with Defendants that, as written, these Requests are overly broad and unduly burdensome. Defendants' objections are SUSTAINED.

**Defendants' Responses to Request for Production 19**

Plaintiff contends that before Defendant Luking attempted to remove his lipoma, she told him she had previously removed many lipomas while she was in private practice. At her deposition, Defendant Luking testified that she could have removed "one or one hundred" lipomas while she was in private practice. She apparently retains her patient's files from the year that she spent in private practice. Plaintiff asked Defendants Wexford, Shah, Garcia, Stover, and Luking for "all documents and communications related to any lipoma removal procedures, operations, assessments, and/or surgeries conducted by Defendant Luking in her capacity as an owner and/or employee of the Luking Family Practice." The Court agrees that the number of lipomas Nurse Practitioner Luking removed while she was in private practice is relevant to the issue of informed consent and Plaintiff's negligence claim[1], but this Request as worded is overly broad and unduly burdensome and Defendants' objections are SUSTAINED. The information sought is better suited for an Interrogatory.

**Defendants' Response to Request #1 of Plaintiff's Third Requests to Admit**

Plaintiff asks Defendants to "admit that despite Dr. Garcia's alternative treatment plan ordering 'pictures', no such photographs were ultimately taken of Plaintiff's lipoma." Defendants

---

[1] *See Bailey v. Mercy Hosp. and Med. Ctr.*, 2021 IL 126748, ¶8 (2021).

Wexford, Garcia, Shah, Stover, and Luking admit that the individual Defendants did not take photographs of Plaintiff's lipoma, but otherwise lack information to admit or deny whether a third party took photographs of the lipoma. Defendants further explained in their Response that only correctional officers could take pictures inside the prison. Plaintiff wants the Court to order Defendants to definitively admit that no photographs were taken, but Defendants have adequately explained why they cannot do so. Plaintiff's motion to compel further response to Request #1 is DENIED.

**IT IS SO ORDERED.**

**DATED:** January 12, 2026

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**